IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DERRICK N. H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-124-MAB[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for disability benefits in November 2016, alleging disability as of July 8, 2016. After holding an evidentiary hearing, an ALJ denied the application on February 12, 2019. (Tr. 15-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10 & 11.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. The ALJ failed to properly evaluate residual functional capacity (RFC).

2. The ALJ failed to properly evaluate Step 2 of the sequential evaluation.

## APPLICABLE LEGAL STANDARDS

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either Step 3 or Step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at Step 3, precludes a finding of disability. The plaintiff bears the burden of proof at Steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show

the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff has not engaged in substantial gainful activity since November 15, 2016, the application date.

The ALJ found that Plaintiff had severe impairments of peripheral vascular disease; status post bilateral lower extremity stent placement; and status post left calcaneus fracture.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff had the residual functional capacity (RFC) to, "perform sedentary work…except the claimant must never climb ladders, ropes, of[sic] scaffolds; can occasionally climb ramps and stairs; can occasionally crouch and crawl; and must never work at unprotected heights, around moving mechanical parts or other such hazards." (Tr. 19).

Based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was unable to do his past work yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## THE EVIDENTIARY RECORD

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1969 and was 49 years old on the date of the ALJ's decision. (Tr. 172). Plaintiff said he stopped working in January 2010 for reasons other than his

impairments. Plaintiff said, "I was fired. A lot of things went wrong and they jsut[sic] released me." Despite this, Plaintiff said he believes his conditions became severe enough in January 2015 to stop working. He previously worked in maintenance from 2001 to 2006 and 2008 to 2010. (Tr. 166-67).

In a Function Report submitted in May 2017, Plaintiff said he likes to fish, but he cannot stand walking up and down all the hills around the lake. Plaintiff said he cannot participate in any sports and cannot walk longs periods to exercise. Plaintiff said his conditions affect his lifting, standing, walking, stair climbing, and use of his hands. Plaintiff is left-handed. Plaintiff indicated he can walk about a quarter of a mile before needing to rest. (Tr. 220-21).

### 2.    Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in November 2018. (Tr. 32). Plaintiff said he was sitting the majority of the time because he cannot stand on his legs for long periods of time. Plaintiff indicated he had a fairly serious injury to his heel. It is also worth noting Plaintiff used a cane at the evidentiary hearing. (Tr. 38).

A vocational expert (VE) testified at the hearing. The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings, and the VE testified that a person with Plaintiff's RFC could not perform his past work. The VE testified this person could do jobs such as a ticket taker, a circuit board touch-up worker, and an optical good assembler. (Tr. 43-44).

### 3. Relevant Medical Records

Plaintiff presented to Memorial Hospital's Emergency Department on November 7, 2017, after cutting his middle three fingers with a table saw. (Tr. 780). A physical examination revealed Plaintiff had lacerations to the second through fourth digits. Plans included pain medications, an x-ray, and a follow-up appointment. (Tr. 782). The impression was, "Laceration of hand with complication, Open finger fracture." (Tr. 783). Plaintiff underwent an x-ray of his left hand, and the impression was, "1. Comminuted, displaced fracture of the mid/distal second distal phalanx. No apparent DIP joint involvement. 2. Tiny fracture fragment of the dorsal tip of the fourth distal phalanx." (Tr. 837).

Plaintiff underwent an ankle x-ray on April 27, 2018, and the impression was, "1. There is a highly comminuted mildly to moderately displaced fracture seen throughout the cuboid[3] as above." (Tr. 828). Plaintiff also underwent a foot x-ray, and the impression was, "1. There is a highly comminuted mild to moderately displaced fracture seen diffusely of the calcaneus[4]." (Tr. 830).

Plaintiff presented to Justin Colanese, an orthopedic foot and ankle surgery specialist, on May 2, 2018, reporting being diagnosed with a calcaneus fracture after falling while trimming trees. A physical examination revealed Plaintiff's left foot was

---

[3] Cuboid refers to, "the outermost bone in the distal row of tarsal bones of many higher vertebrates." https://www.merriam-webster.com/dictionary/cuboid, visited on September 24, 2020.

[4] Calcaneus refers to, "bone." https://medical-dictionary.thefreedictionary.com/calcaneus, visited on September 24, 2020.

moderately swollen; had mild planus deformity bilaterally; had mild ecchymosis[5]; had tenderness to palpation with calcaneal squeeze; and had limited inversion and eversion range of motion. Regarding imaging, Dr. Colanese said:

> Imaging of his left foot and heel show an intra-articular calcaneus fracture, there is loss of height, Boehler's angle measures -4 degrees, [unrecognizable text] lateral wall blowout, no major varus or valgus, and intra-articular the posterior facet with several fragments and mild displacement intra-articularly.

(Tr. 853). The assessment included heel pain and closed displaced fracture of body of left calcaneus, and plans included non-surgical treatment due to comorbidities and high risks for wound healing complications. (Tr. 854).

Plaintiff underwent a heel x-ray on May 2, 2018, and the impression was, "Comminuted depressed intrarticular acute left calcaneus fracture." (Tr. 826).

Plaintiff presented to Miguel Granger, a family medicine specialist, on May 10, 2018, reporting a fracture and heel pain. (Tr. 873, 876). The assessment included fracture of calcaneus, and plans included medications. (Tr. 877).

Plaintiff presented to Dr. Colanese on May 31, 2018, for a follow-up on his ankle injury. Plaintiff reported ankle stiffness and pain. A physical examination revealed some deformity with loss of heel height; improved swelling; evidence of resolving fracture blisters; no tenderness to palpation medially or laterally; tenderness directly under the plantar aspect of the foot; and diminished pulses. Dr. Colanese said, "Calcaneal views

---

[5] Ecchymosis refers to, "a hemorrhagic spot, larger than a petechia, in the skin or mucous membrane, forming a flat, rounded or irregular, blue or purplish patch." https://medical-dictionary.thefreedictionary.com/ecchymosis, visited on September 24, 2020.

redemonstrate the intra-articular calcaneus fracture with joint depression, lateral wall blowout, there appears to be some increased loss of height compared to prior films." Dr. Colanese noted there was not much evidence of healing on the radiographs that day. The assessment included closed displaced fracture of body of left calcaneus with routine healing, and plans included continuing with nonoperative treatment, non-weightbearing precautions, pain medications, and follow-up appointments. (Tr. 850-51).

Plaintiff underwent a heel x-ray on May 31, 2018, and the impression was, "Redemonstrated intrarticular left calcaneus fracture, with minimal interval healing, and mild increase in fracture displacement and impaction." (Tr. 825).

Plaintiff underwent a foot x-ray on June 2, 2018, and the impression was, "No change in the comminuted intra-articular displaced calcaneus fracture." (Tr. 834).

Plaintiff underwent a heel x-ray on June 28, 2018, and the impression was, "Redemonstrated intra-articular comminuted calcaneus fracture with impaction, further loss of height and increased calcaneal widening compared to previous view, early healing." (Tr. 823).

Plaintiff presented to Dr. Colanese on June 29, 2018, for a follow-up of his left heel. Although Plaintiff was instructed to wear a boot without weight-bearing, Plaintiff had been putting some weight on his foot and still had pain and swelling. A physical examination revealed mild swelling, planovalgus[6] deformity, continued loss of heel

---

[6] Planovalgus refers to, "A condition in which the longitudinal arch of the foot is flattened and the hindfoot is everted." https://medical-dictionary.thefreedictionary.com/planovalgus, visited on September 24, 2020.

height, pain with calcaneal squeeze, tenderness palpation plantarly, and diminished pulses. Dr. Colanese said, "Repeat imaging of his right heel taken today redemonstrates intra-articular calcaneus fracture with joint depression, lateral wall blowout, and compared to previous views continues to lose height of his heel and increase in infection. No definitive union." The assessment included closed displaced fracture of body of left calcaneus with routine healing, and plans included pain medications. (Tr. 847-48).

Plaintiff underwent a heel x-ray on June 29, 2018, and Dr. Colanese said:

> He has been noncompliant with nonweightbearing precautions, fracture is not united, continues to lose some height of his calcaneus. Lateral impingement, subtalar arthritis, anterior ankle impingement are all likely outcomes. For now, he is going to use crutches, continues with CAM boot, and remain nonweightbearing.

(Tr. 848).

Plaintiff presented to Dr. Granger on July 6, 2018, reporting left heel pain, wearing a boot, and pain with prolonged walking. (Tr. 870, 872). The assessment included fracture of calcaneus, and plans included medications. (Tr. 873).

### 4. Medical Opinions

James Madison, a state agency medical consultant, performed a Physical Residual Functional Capacity Assessment on March 15, 2017. Dr. Madison said Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour work day; sit about six hours in an eight-hour work day; and push and/or pull without limitations other than shown for lifting and/or carrying. (Tr. 53).

Julio Pardo, a state agency medical consultant, also performed a Physical Residual Functional Capacity Assessment and concluded the same on June 5, 2017. (Tr. 64).

## ANALYSIS

First, Plaintiff argues the ALJ erred by basing the RFC assessment on the opinions from the state agency medical consultants who had not reviewed later medical evidence and by determining the significance of those reports herself.

It is not error to rely on state agency opinions simply because they did not review later imaging. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). However, an ALJ should not "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). Here, over a year passed between the March and June 2017 medical opinions and the additional medical records and x-rays that accumulated regarding Plaintiff's heel fracture. This passage of time allowed for many new, significant medical observations and diagnoses, as suggested in *Moreno*, and could have changed a reviewing medical opinion. That alone has the potential to change the outcome of a case. Therefore, the Court agrees with Plaintiff's argument here.

Plaintiff argues the ALJ erred by dismissing the June 2018 x-rays' results of Plaintiff's heel fracture by saying, "this impairment appears to be healing with minimal treatment." (Tr. 21). This Court cannot entirely say the ALJ independently interpreted the x-ray results because the June 28, 2018, x-ray impression said, "early healing" at Tr. 823, and Dr. Colanese's assessment the next day included, "closed displaced fracture of body

of left calcaneus with routine healing" at Tr. 847. Therefore, this Court cannot agree with Plaintiff that the ALJ independently interpreted the x-ray evidence.

In *McHenry v. Berryhill*, the court decided the ALJ erred by interpreting an MRI himself rather than having a doctor explain the significance. 911 F.3d 866, 871 (7th Cir. 2018). The facts in *McHenry* can be compared to the ones at hand. In *McHenry*, the ALJ independently compared MRI results with prior medical records to decipher whether the impairments "actually existed at the same or similar level." *Id*. Here, the ALJ relied on the x-ray impression and Dr. Colanese's assessment when describing the heel fracture as healing. There is no error or mischaracterization of the results when an ALJ simply paraphrases findings straight from the x-ray report itself. However, there *is* error when the ALJ fails to acquire further medical opinions as described above.

Second, and piggy-backing off of Plaintiff's argument above, Plaintiff argues the ALJ failed to fully and fairly develop the record. To support this assertion, Plaintiff argues that the ALJ failed to ask Plaintiff detailed questions at the evidentiary hearing regarding his heel fracture and failed any attempt to update the medical evidence, by way of a medical opinion, through November 2018 to determine the extent of the heel damage.

An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 404.1512(b). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits [internal citation omitted]." *Sims v. Apfel*, 120 S. Ct. 2080, 2085 (2000). An ALJ satisfies their duty to develop the record when the ALJ investigates for possible

disabilities and discovers all relevant evidence. *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019). To prove the ALJ failed, "the claimant must point to specific, relevant facts that the ALJ did not consider." *Id.*

Defendant attempts to negate Plaintiff's argument simply because Plaintiff was represented by an attorney at the hearing. However, Defendant's argument fails. At the evidentiary hearing, the ALJ said Plaintiff's attorney indicated, "he's not aware of any other evidence that's relevant to this case…" (Tr. 34). Also, the only mention of Plaintiff's heel fracture was by Plaintiff's attorney when examining Plaintiff at the hearing. (Tr. 38). The ALJ did not ask Plaintiff any questions concerning his heel fracture. In fact, Plaintiff's attorney was the only one that did. The ALJ asked some questions but did not investigate into Plaintiff's medical impairments. Despite Plaintiff's attorney asking questions and despite the ALJ's examination of the VE, the ALJ still had a duty to compile a complete record. What is most concerning is the ALJ's failure to inquire about Plaintiff's medical impairments and the ALJ's failure to request up-to-date state agency medical opinions following Plaintiff's heel fracture.

The unfortunate result was a gap in the record regarding further medical evidence and opinions. An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)(internal citations omitted). Here, there is simply not that logical bridge between the evidence and the ALJ's conclusions.

Third, Plaintiff argues the ALJ erred in not identifying the results of his table saw accident, "status-post partial amputation of the second through fourth digits of the left hand," as a severe impairment at Step 2. (Tr. 18). Plaintiff acknowledges that a failure to find an impairment as "severe" during Step 2 can be harmless error, but Plaintiff alleges that the ALJ failed to consider the combined effects of Plaintiff's impairments which changed the outcome of the case.

The failure to designate status-post partial amputation of the second through fourth digits of the left hand as a severe impairment, by itself, is not an error requiring remand. At Step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments. This is only a "threshold issue," and, as long as the ALJ finds at least one severe impairment, she must continue with the analysis. And, at Step 4, she must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. *See Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010)).

The ALJ found Plaintiff had the severe impairments of peripheral vascular disease; status post bilateral lower extremity stent placement; and status post left calcaneus fracture. It is true that regardless of the designation of impairments as severe, the ALJ is still required to consider the combined effects of all impairments in determining Plaintiff's RFC. "When assessing if a claimant is disabled, an ALJ must account for the

combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018).

This Court does not find Plaintiff's argument persuasive here. Plaintiff does not claim, for example, that there are a multitude of medical records to support a heavier discussion of his finger condition in relation to his other impairments. Plaintiff simply points to the existence of his condition and how the ALJ did not ask the VE whether a fingering issue would impact Plaintiff's ability to perform sedentary jobs. Plaintiff indicated that each of the jobs the ALJ found Plaintiff could perform require fingering. However, Plaintiff has failed to identify any evidence demonstrating his inability to finger. Additionally, the ALJ addressed Plaintiff's partial-amputation issue at Tr. 18. Plaintiff is simply reaching by employing a "reasonable person" standard and declaring he has an impairment with fingering simply due to his table saw accident. Ultimately, this argument is not persuasive and lacks support in the record.

This Memorandum and Order should *not* be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for

rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 25, 2020**

                                         **/s/ Mark A. Beatty**
                                         **MARK A. BEATTY**
                                         **United States Magistrate Judge**